UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN BRODE,

    Plaintiff/Counter-Defendant,

                                                            Civil No. 09-14212
                                                             District Judge Denise Page Hood

v.

BOSQUETT & COMPANY, INC.,

    Defendant/Counter-Plaintiff

and

DAVID D. FISHER, an individual,

    Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BOSQUETT & COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT

**I.    INTRODUCTION**

    This matter is before the Court on Defendant Bosquett & Company, Inc.'s ("Bosquett") Motion for Summary Judgment **[Docket No. 34, filed on May 31, 2011]**. Plaintiff filed a response on June 28, 2011 **[Docket No. 37]**, to which Defendant filed a reply **[Docket No. 39, filed on July 11, 2011]**.

**II.    STATEMENT OF FACTS**

    In January 2005, David Fischer purchased Defendant Bosquett & Co., Inc. ("Defendant"), an independent business insurance agency. Soon after the purchase, Defendant began experiencing several cash flow problems, purportedly due to the economic downturn, the failure of customers to pay premiums, and the overcompensation of former Bosquett owner,

1

Gordon St. John.

Plaintiff Karen Brode began working for Defendant as a Commercial Marketing Manager on February 22, 2005. Plaintiff's starting salary was $75,000. At the time Plaintiff was hired, Defendant contends she signed an at-will employment contract, however, Plaintiff denies that the signature on the form is her signature. Defendant also had an employee manual in effect that stated Plaintiff was employed on an at-will basis, that no oral statements could lead to an enforceable contract with Defendant and that Defendant reserved the right to modify or delete all company-provided benefits at any time.

While working, Plaintiff spent the majority of her time servicing St. John's accounts. By February 2008, Plaintiff was earning $80,000 annually. In August 2008, Defendant states that it began to reduce Plaintiff's compensation due to financial difficulties. In January 2009, Defendant ceased all health care benefits for all employees. Defendant then raised Plaintiff's salary from $50,000 to $60,000. For a time, St. John, Barry Paulsell, and Larry Nickle each paid Plaintiff $10,000 of their own money. These payments ceased by December 2008.

After hiring an independent certified public accountant, Defendant discovered that it was overcompensating St. John. As a result, Defendant ceased paying monthly service commissions to St. John in the fall of 2008. St. John contacted the Michigan Insurance Commissioner ("OFIR") to complain about Defendant's poor cash flow, and encouraged Plaintiff to do the same.

In or around 2008, Plaintiff received numerous notices of insurance cancellation policies belonging to Defendant's customers. Fischer was able to have the policies reinstated by paying the premiums to the various insurance carriers. Plaintiff alleges that, over time, this situation

2

worsened. In June 2009, Plaintiff called an unidentified secretary at OFIR and reported that Defendant took premiums from customers and mishandled the money.

St. John decided to have one of his accounts pay insurance premiums directly to him. He also began withholding payments from other accounts he serviced and transferred three accounts to the St. John Agency, allegedly in violation of his non-compete agreement. Plaintiff assisted St. John in this process, and neither St. John nor Plaintiff informed OFIR of this activity.

On August 11, 2009, OFIR suspended Defendant's and Fischer's licenses following an investigation. Fischer sold Defendant's book of business to Sterling and ceased its business operations on August 13, 2009. On August 13, 2009, Defendant terminated Plaintiff, along with several other employees. Defendant states that, by the following week, all employees had been terminated. Five days after Plaintiff's termination from Bosquett, Plaintiff began work for another insurance company, earning $10,000 less annually.

Plaintiff alleges four counts against Defendant Bosquett: 1) breach of contract/violation of ERISA; 2) retaliatory discharge in violation of Michigan's Whistleblower Protection Act ("WPA"); 3) conversion; and 4) slander.

### III.     STANDARD OF REVIEW

Under Rule 56(c), a court must review "pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2000). "Materiality" is determined by the substantive law claim. *Boyd v. Beappler*, 215 F.3d 594, 599 (6th Cir. 2000). An issue is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Henson v. Nat'l Aeronautics and Space Admin.*, 14 F.3d 1143, 1148 (6th Cir. 1994) (quoting *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

       The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment

purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

## IV.   APPLICABLE LAW AND ANALYSIS

### A.   Breach of Contract

Under Michigan law, contracts for permanent employment are for an indefinite period of time and are presumptively construed to provide employment at will. *Rowe v. Montgomery Ward & Co.*, 437 Mich. 627, 636 (1991); *Lynas v. Maxwell Farms*, 279 Mich. 684, 687; 273 N.W. 315 (1937). In *Touissant v. Blue Cross & Blue Shield*, the court acknowledged an exception to the general rule, "when an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." 408 Mich. 579, 610 (1980). If employment is for a definite term, "it is implied, if not expressed, that the employee can be discharged only for good cause and collective bargaining agreements often provide that discharge shall only be for good or just cause." *Id.* at 611. The presumption of employment at will can be overcome with proof of either a contract provision for a definite term of employment, or a contract provision prohibiting discharge absent just cause. *Rood v. General Dynamics Corp.*, 444 Mich. 107, 117; 507 N.W.2d 591 (1993); *Lytle v. Malady*, 458 Mich. 153, 164 (1998).

In defense of its argument that Karen Brode was an at-will employee, Defendant Bosquett provides an "At Will Employment Policy," bearing the signature of Karen Brode, as well as an "Associate Handbook" stating that "[e]mployment is at-will and the associate or *Bosquett & Company* may at any time terminate the employment relationship with or without cause consistent with applicable state or federal law." Ex. 7 to Def.'s Mot. for Summ. J.; Ex. 10 to Def.'s Mot. for Summ. J. Plaintiff contends that she never signed an "At Will Employment

5

Policy." Plaintiff provides no evidence that the signed At Will Employment Policy produced by Bosquett was forged. The Court need not decide whether the signature at-issue was valid, as Plaintiff has not created any genuine issue of material of fact that would overcome the presumption of at-will employment under Michigan law.

Plaintiff further argues that Defendant was in breach of her employment agreement when it changed her salary and benefits during the course of her employment. Plaintiff states, and Defendant does not refute, that her starting salary at Bosquett was $75,000. It is also undisputed that she subsequently received a raise, bringing her salary to $80,000. Defendant argues that, due to cash flow issues, her salary was reduced in August 2008 to $50,000. St. John and Paulsell, fearful that Plaintiff would leave Bosquet, began to pay Plaintiff a portion of the reduction on their own through December 2008. In contrast, Plaintiff contends that Bosquett never reduced her pay. Instead, Bosquett arranged an "internal change" in how Plaintiff's salary would be paid, in which Lawrence Nickel, Barry Paulsell, and St. John would each contribute $10,000, so that Plaintiff's salary would remain unchanged.

Pursuant to Bosquett's "Associate Handbook," Bosquett "reserves the right to modify, add, or delete at anytime any company policy, benefit, practice or procedure whether contained in the Associate Handbook or established through employment practices." Ex. 10 to Def.'s Mot. for Summ. J. In January 2009, Bosquett discontinued health benefits to all employees. Ex. 13 to Def.'s Mot. for Summ. J. As a result, Plaintiff's salary was increased to $60,000. Although Plaintiff testifies at various times that her paycheck was either "cut" or "shorted," Plaintiff has provided no evidence that would undermine Bosquett's ability to modify her salary under Bosquett's employment policies. As there is no genuine issue of material fact, Plaintiff's claim

6

for breach of contract fails, and Defendant is entitled to judgment on this claim as a matter of law.

### B.     ERISA violation

Plaintiff's claim under ERISA stems from Defendant's alleged failure to pay monies withheld from her paycheck from January 1, 2007 through April 18, 2007 into her 401K plan. Plaintiff bases her claim on her knowledge that these payments were not reflected in the electronic records of American Funds, the company administering Bosquett's 401K at the time Plaintiff was terminated.  Plaintiff has not refuted the evidence provided by Defendant that American Funds did not begin administering the 401K until April of 2007.  Further, the records of the previous administrator, John Hancock, demonstrate that all of the funds withheld from Plaintiff's paycheck were deposited into Plaintiff's 401K account. Ex. 5 to Def.'s Mot. for Summ. J., Dep. of David Fischer, 130:7-131:8; Ex. 22 to Def.'s Mot. for Summ. J.  Plaintiff has not rebutted this evidence to demonstrate a genuine issue of material fact as to whether the funds were deposited.  Defendant is entitled to summary judgment on Plaintiff's ERISA claim.

### C.     Whistleblower's Protection Act/Retaliatory Discharge

Section 2 of the Whistleblower's Protection Act ("WPA") provides in part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation....

Mich. Comp. Laws § 15.362.  In order to make a prima facie showing under §2 of the WPA, a plaintiff must demonstrate that (1) she was engaged in a protected activity as defined by the act, (2) the defendant took an adverse employment action, and (3) a causal connection exists between

the protected activity and the adverse employment action. *Chandler v. Dowell Schlumberger Inc.*, 456 Mich. 395, 399, 572 N.W.2d 210 (Mich. 1998).

Plaintiff argues that her act of reporting Bosquett's nonpayment of insurance premiums to the proper insurers to OFIR constitutes protected activity under the WPA. Defendant counters that, Plaintiff knew about the non-payment of insurance premiums as early as July 6, 2007, but did not report it until June 2009. According to Plaintiff, although she never reported to the state, Plaintiff expressed her concerns over nonpayments and delinquencies to Fischer and Bosquett's accounting department. She stated that, until March 2009, Bosquett was able to cure the nonpayment of premiums internally, and an illegal act had not occurred.

"In a federal whistleblower action an appellate court held that the primary motivation of an employee availing herself of whistleblower protection must be a desire to inform to public on matters of public concern . . . ." *Wolcott v. Champion Int'l Corp.*, 691 F. Supp. 1052 (W.D. Mich. 1987) *citing Fiorillo v. US. Department of Justice*, 795 F.2d 1544 (Fed. Cir. 1986).

> Where an employee acts unlawfully or on behalf of his or her employer and keeps the matter quiet for more than a year, eventually revealing it not to the appropriate authorities or event to others *for the purpose of preventing public injury, but rather for some other limited and private purpose*, however laudable that purpose may appear to the employee, no such protection is afforded."

*Id.* at 1065.

Plaintiff, in sworn deposition testimony, stated "I didn't want to have to report that or anything but when it came down to it that I could lose my license and my livelihood, I called the state." Pl.'s Dep. Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J. at 99:1-4. By Plaintiff's own testimony, the impetus for her reporting to the state was to avoid losing her own insurance license. Plaintiff argues that she was acting in the best interest of Bosquett's clients at all times,

8

and although she had previously brought the nonpayment of premiums to the attention of the accounting department, she reported Bosquett once the violations became more frequent and were not being cured. Plaintiff testifies that she "called and told [OFIR] why [she] was calling . . . . They asked [her] why [she] hadn't called sooner and [she] told them [they'd] always been able to get out of it and get the clients paid. Now it was becoming there [sic] were several things–no one was getting paid." Pl.'s Dep., Ex. 1 to Pl.'s Resp. to Def.'s Mot. for Summ. J., at 102:12-24. A genuine issue of material of fact exists as to the motivation for Plaintiff's call and, therefore, whether Plaintiff's telephone call constituted protected activity. There is no dispute that an adverse employment action took place as Defendant reports every employee was laid off. However, a genuine issue of material of fact exists as to whether protected activity took place and whether such activity caused the adverse employment action . Summary judgment is inappropriate on Plaintiff's WPA claim.

      **D.**      **Conversion**

"In the civil context, conversion is defined as any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.,* 439 Mich. 378, 391 (1992). For a plaintiff to prevail on a claim of conversion of money, "the defendant must have an obligation to return the specific money entrusted to his care." *Head v. Phillips Camper Sales & Rental, Inc.,* 234 Mich. App. 94, 111 (1999); *Hanover Exchange v. Metro Equity Group, LLC.*, 2009 WL 2143866 *2 (E.D. Mich. July 14, 2009). However, "failure to pay a debt, without more, does not amount to conversion of the unpaid funds." *Hanover,* 2009 WL 2143866 at *2. The Michigan Supreme Court has held that "conversion is maintainable for money when trover would lie under the former practice,"

and "[t]rover is not maintainable for money unless there [is] an obligation on the part of the defendant to return the specific money intrusted to his care." *Alfred Shrimpton & Sons v. Culver*, 109 Mich. 577, 580 (1896).  A complaint must allege a separate and distinct possession of another's property to constitute a claim of conversion.  *Hanover,* 2009 WL 2143866 at *2.  An example of specific money is "where an individual cashes a check and retains the full amount of the check when he is entitled to only a portion of that amount." *Id*.  Failure to pay a debt, without more, does not amount to conversion of the unpaid funds.  *Id.*  In *Garras v. Bekiares,* 315 Mich. 141, 147 (1946), the plaintiff brought an action alleging conversion based on a dispute over a consignment agreement. The Michigan Supreme Court held that because the "plaintiff was not entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion." *Id.*

Plaintiff argues that the 401K contributions deducted from her paychecks were entrusted to Defendant to be deposited into Plaintiff's 401K account.  As discussed above, the unrefuted evidence is that the contributions were actually deposited into the 401K account.  Plaintiff additionally argues that, from August 2008 through August 2009, Defendant did not pay her $30,000 of her salary, which she claims was a breach of her employment terms.  As discussed above, Defendant is entitled to summary judgment on the breach of contract claim.  Further, there was no "specific" money entrusted to Bosquett from which her paycheck or salary would be paid to her.  Defendants is entitled to summary judgment as a matter of law on Plaintiff's conversion claim.

   **E.   Slander**

Slander is defamation by oral speech.  *See, e.g., Cole v. Knoll*, 984 F. Supp. 1117, 1134

(W.D. Mich. 1997). The elements for slander or defamation include: "(1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionablity of the statement irrespective of special harm or the existence of special harm caused by the publication." *Wylin v. Auto Owners Ins. Co.*, No. 255669, 2005 WL 2656642, at *5 (Mich. App. Oct. 18, 2005) (citing *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 239 Mich.App. 695, 702 (2000)). Each element must be specifically pled and proved. *Cole*, 984 F. Supp. at 1134.

Not all statements are actionable; "a statement must be 'provable as false' to be actionable," *Ireland v. Edwards,* 230 Mich. App. 607, 616 (1998). "If a statement cannot be reasonably interpreted as stating actual facts about the plaintiff, it is protected by the First Amendment." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Whether a statement is capable of having a defamatory meaning is a question of law, to be determined by the court. *See Kervorkian v. AMA*, 237 Mich. App. 1, 9 (1999).

Plaintiff alleges that a Bosquett customer, Rob DeSantis, informed her that Fischer told him she did not know what she was talking about when she said his insurance policy had been cancelled. Pl's Dep., Ex. 1 to Def.'s Mot. for Summ. J. at 228-229. Similarly, a client at Assisted Care Transportation allegedly informed Plaintiff that Fischer told her the same thing. *Id*. at 243. Plaintiff alleges that another customer, Beatrice Bower, informed her that Fischer told Bower that Plaintiff had her check and Fisher could not believe she had not sent it out. *Id.* at 234-235. Another customer, Greg Fondridge, informed Plaintiff that Fischer told him Fischer had been unaware Fondridge's policies had been cancelled, and Fischer did not know what Plaintiff had done. *Id*. at 237-238.

In this case, each instance of defamation alleged by Plaintiff constitutes inadmissible hearsay, pursuant to Federal Rule of Evidence 805. Plaintiff reports what Fischer allegedly told Plaintiff outside of her presence. "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Financial Corp. v. Midwest Amusement Parks, LLC*, 630 F.3d 651, 656 (7th Cir. 2011). Plaintiff provides no evidence that any of these statements fall outside of the definition of hearsay. Defendants are entitled to summary judgment on Plaintiff's slander claim as a matter of law.

## V.   CONCLUSION

Accordingly,

IT IS ORDERED that Defendant Bosquett & Company, Inc.'s Motion for Summary Judgment **[Docket No. 34, filed on May 31, 2011]** is GRANTED IN PART (with respect to Plaintiff's breach of contract, ERISA violation, conversion and slander claims) and DENIED IN PART (with respect to Plaintiff's WPA/Retaliatory Discharge claim).

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  August 18, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 18, 2011, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager